UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASTER NO. 14-MD-02513-RGS

IN RE COLLECTO, INC.,
TELEPHONE CONSUMER PROTECTION ACT LITIGATION

MEMORANDUM AND ORDER
ON DEFENDANT COLLECTO'S
MOTION FOR SUMMARY JUDGMENT

February 10, 2016

STEARNS, D.J.

Defendant Collecto, Inc., pursues debts on behalf of third-party providers of goods and services. Plaintiffs John Lofton, Robert Pegg, Richard Davenport, and Ralph Davenport brought separate causes of action against Collecto under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, on behalf of themselves and putative classes of similarly situated plaintiffs. Plaintiffs allege that Collecto repeatedly dialed their cellular telephones using an automated telephone dialing system (ATDS) without their prior express consent. Collecto now seeks summary judgment against all plaintiffs, arguing that its telephone dialers do not meet the legal definition of an ATDS.

BACKGROUND

The TCPA, enacted in 1991, provides in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice.

47 U.S.C. § 227(b).  The statute defines an ATDS as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1).

The FCC determined in 2003, 2008, and most recently in 2015, that a so-called "predictive dialer"[1] fits the definition of an ATDS.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003) ("[T]he Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 (Jan. 4, 2008)

---

[1] The FCC has defined a "predictive dialer" as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with the software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  18 FCC Rcd. at 14091.

("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7974 (July 10, 2015) ("We . . . reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of 'autodialer' for the same reason.").

On August 26 and 27, 2009, Collecto placed calls using a "Maestro Dialer" manufactured by Noble Systems, Inc. (Noble Dialer), to a cellular telephone owned by plaintiffs Richard and Ralph Davenport, seeking to collect a debt. From May 31, 2012, through June 7, 2012, Collecto used the Noble Dialer to place multiple calls to plaintiff John Lofton's cellular telephone, also seeking to recover an outstanding debt. Between June 11 and June 20, 2013, Collecto made a series of calls using a "Guaranteed Contacts" dialer to call plaintiff Robert Pegg's telephone in a similar dunning effort.[2] It is undisputed that Collecto did not have plaintiffs' prior express consent for the calls.

---

[2] Collecto allegedly acquired plaintiffs' telephone numbers through a harvesting technique known as "skip tracing" or "skip location." "Skip tracing" is used to glean up-to-date contact information for debtors who have, figuratively speaking, skipped town. Dkt. # 51-3 at 30.

The three plaintiffs filed separate class action Complaints against Collecto: Lofton in the Northern District of California; Pegg in the District of Massachusetts; and the Davenports in the Eastern District of Michigan. (The TCPA expressly authorizes a private right of action. 47 U.S.C. § 227(b)(3)). Plaintiffs allege that Collecto's Noble and Guaranteed Contact Dialers are ATDS's, the use of which violates the TCPA. Collecto's Director of Telephony, Peter Cappola, acknowledges that Collecto's dialers have predictive dialing capabilities. The Noble Dialer, for example, is configured to interface with Collecto's Flexible Automated Collection Software (FACS) database. This database contains information on debtors' accounts, including telephone numbers supplied by Collecto's clients. Collecto employees enter the account information into FACS, then import the telephone numbers into the Noble Dialer to create call lists. When a Collecto employee logs onto the Noble Dialer, he or she selects a "group" of call lists to initiate calls. The Noble Dialer then automatically calls the numbers on the list. Based on the employee's predicted availability, the dialer will connect the recipient of the call with the employee logged onto that "group."[3] The parties disagree

---

[3] It is undisputed that the Guaranteed Contacts Dialer functions in essentially the same way as the Noble Dialer.

whether Collecto's dialers have the capacity to store or generate random or sequential numbers.

On February 19, 2014, the Judicial Panel on Multidistrict Litigation transferred the Davenport and Lofton actions to this district to be consolidated with the Pegg action for pretrial proceedings. A hearing on Collecto's motion for summary judgment was held on January 26, 2016.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall not be granted if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Collecto's summary judgment argument begins with the contention that the court should give no weight whatsoever to the FCC's determination that a predictive dialer is an ATDS for TCPA purposes. According to Collecto, the FCC lacks the statutory authority to "modify" Congress' definition of an

ATDS, and, in any event, relied on "false hearsay" in doing so.[4] Def.'s Mem. at 14; Reply at 5-6. Collecto's opening argument does not survive the Administrative Orders Review Act (Hobbs Act), 28 U.S.C. § 2342(1), under which this court lacks jurisdiction to set aside, suspend, or adjudicate the validity of an FCC ruling and final order. *See Fed. Commc'ns Comm'n v. ITT World Commc'ns*, 466 U.S. 463, 468-469 (1984) (the Hobbs Act precludes any exercise of a district court's jurisdiction, even over a claim that an agency acted *ultra vires*).[5]

---

[4] Collecto spends substantial portions of its briefs arguing that the FCC's determination was based on "false hearsay." Even if true, courts are not free to impose additional procedural requirements (including evidentiary restrictions) on agency adjudications. *See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) ("Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them."); *see also Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654-655 (1990) (applying *Vermont Yankee* to informal agency adjudications).

[5] The Courts of Appeals appear unanimous in the view that when a challenge to an FCC order "arises in a dispute between private parties [it] makes no difference – the Hobbs Act's jurisdictional limitations are equally applicable whether [a party] wants to challenge the rule directly . . . or indirectly." *CE Design v. Prism Bus. Media*, 606 F.3d 443, 448 (7th Cir. 2010) (internal citations and quotation marks omitted). *See also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120-1121 (11th Cir. 2014) ("By refusing to enforce the FCC's interpretation, the district court exceeded its power."); *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013) ("To hold [that a party can challenge the validity of a regulation] merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act. Such an end run could

Alternatively, Collecto contends that to the extent that the FCC has statutory authority to regulate autodialers, it is located in 47 U.S.C. § 227(b)(2), which grants the agency the authority to "implement the requirements of *this subsection*." According to Collecto, this wording was intended by Congress as a limitation precluding the FCC from issuing rules interpreting subsection 227(a) (which defines an ATDS). The argument, however, founders on 47 U.S.C. § 201(b), which provides in relevant part: "The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions *of this chapter*." (Emphasis added). Congress, in other words, delegated plenary authority to the FCC to promulgate regulations to implement the provisions of Chapter 5

---

result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency."); *Leyse v. Clear Channel Broad., Inc.*, 545 Fed. App'x 444, 457-458 (6th Cir. 2013) ("Attacks such as these – on the procedural genesis of administrative rules – are exactly the kind of facial attacks on the validity of FCC orders that the Hobbs Act meant to confine.") (internal citation and quotation marks omitted); *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000) ("We have squarely held . . . that challenging FCC regulations is equivalent to an action to enjoin, annul, or set aside an order of the FCC."). Collecto's suggestion that the Supreme Court's recent decision in *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014), overruled this line of Hobbs Act cases, is wrong. *Utility Air* simply affirms the principle that an agency cannot promulgate a rule that is directly at odds with an unambiguous statutory term. It does not address the larger issue of a district court's jurisdiction to set aside such a ruling.

of Title 47 (governing all wire and radio transmissions), including those of 47 U.S.C. § 227(a).

Finally, Collecto argues that even if deemed a valid exercise of agency powers, the FCC's autodialer determination does not deserve any deference under the doctrine of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).  As a rule, before applying *Chevron* deference, a reviewing court is to decide whether the government agency was granted statutory authority by Congress to issue rules and declaratory rulings that carry the force of law. *See United States v. Mead Corp.*, 533 U.S. 218, 232-236 (2001). But this is a matter to be addressed in the Court of Appeals, not this court. Even if I were to read the FCC's definition as inconsistent with the text of the TCPA, I do not have the authority to undo or revise an FCC ruling.  The jurisdictional limitation of the Hobbs Act is clear in this regard: "The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47." 28 USC § 2342 (emphasis added).

Collecto objects that "[f]or this Court to hold that it has jurisdiction to decide Collecto's motion for summary judgment, but [to also] hold that it does not have jurisdiction to address the validity of the FCC's ATDS Rules would be fundamentally unfair and violate Collecto's right to due process." Def. Mem. at 15.[6] Collecto proposes that the court either disregard the FCC's rulings (which is a nonstarter),[7] or alternatively, dismiss the case for lack of subject matter jurisdiction. Collecto's due process argument ignores the fact that the Hobbs Act provides a powerful forum in which to challenge an FCC ruling – the federal circuit courts of appeal. *See* 28 U.S.C. § 2344. Collecto admits as much, but argues that the limited window in which to file an appeal

---

[6] *But see CE Design,* 606 F.3d at 446 n.3 ("Although the Hobbs Act prevents the district court from considering the validity of final FCC orders, the court retains jurisdiction to determine whether the parties' actions violate FCC rules."). Nothing in the cases cited by Collecto, or those the court has found, supports a contrary ruling.

[7] Collecto relies on *United States v. Any and All Radio Station Transmission Equip.*, 204 F.3d 658, 667 (6th Cir. 2000) (*Maquina Musical*), for the proposition that this court can rule on the validity of an FCC ruling despite the Hobbs Act's jurisdictional bar. Collecto also cites a non-published Third Circuit decision, *Dominguez v. Yahoo!, Inc.*, 2015 WL 6405811 (3d Cir. Oct. 23, 2015), for the argument that "Collecto's defense does not trigger the Hobbs Act." Reply at 9. *Dominguez* adds little to Collecto's position. Under Third Circuit rules, the opinion is not to be cited as binding precedent. *See* 3d Cir. I.O.P. 5.7 (2015). Moreover, because the *Dominguez* Court found the FCC's 2015 Order (and previous Orders) to be *consistent* with the text of the TCPA, it did not reach the issue of the Hobbs Act jurisdictional bar. 2015 WL 6405811, at *3 n.2.

– 60 days from the date of the agency's final action – works a procedural unfairness. Collecto complains that because of the short limitations period a defendant may have "little reason to know or participate in the agency's proceedings" before it is "time-barred from Hobbs Act review." Reply at 14. Collecto does not, however, argue that it was unaware of either the right of appeal or the FCC's 2015 Order.[8]

In a parting shot, Collecto contends that even if the court yields to the finality of the FCC Orders, the Noble and GC Dialers do not fit within the definition of an ATDS because the dialers are, to a degree, dependent on human intervention.[9] The short answer is that the FCC's definition of an ATDS is based on the capacity of a dialer to operate without human

---

[8] Indeed, prior to the issuance of the Order, Collecto petitioned this court to stay the proceedings until the FCC had ruled. *See* Dkt. # 18, 19. Even today, the door remains open to a challenge. *See Mais*, 768 F.3d at 1121 ("[Plaintiff] is free to ask the Commission to reconsider its interpretation . . . and to challenge the FCC's response in the court of appeals.").

[9] In the cases Collecto cites in support of its argument, human intervention was required to *dial* the target telephones, not simply to activate the process (by assembling a list of numbers and uploading them to the dialer). *See Luna v. Shac*, 2015 WL 4941781, at *5 (N.D. Cal. Aug. 19, 2015) (finding that human intervention "was involved in several stages of the process . . . including . . . clicking 'send' on the website to transmit the message to Plaintiff."); *Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1193-1194 (W.D. Wash. 2014) (finding that to dial and transmit dispatch notification to a taxi, "the dispatcher must have pressed 'enter' to transmit . . . information to both the TaxiMagic program and the nearest available driver.").

intervention, and not on whether *some* act of human agency occurs at some point in the process.[10]

## ORDER

For the foregoing reasons, Collecto's motion for summary judgment is DENIED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[10] As plaintiffs observe, "[e]very ATDS requires some initial act of human agency – be it turning on the machine or pressing 'Go.' It does not follow, however, that every subsequent call the machine dials – or message it sends – is a product of that human intervention." *Johnson v. Yahoo!, Inc.*, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014); *see also Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225-226 (D. Mass. 2014) (Saylor, J.) (citing the FCC's finding that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention" and finding that the FCC's Orders were entitled to deference). The parties dispute (principally through dueling experts) whether the Noble and Guaranteed Contacts Dialers fit the FCC's additional defining feature of a predictive dialer – specifically, whether it has the *capacity* "to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." 18 FCC Rcd. at 14091.